IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDREW DUSTMAN,                    )
                                   )
             Petitioner,           )
                                   )
      v.                           )    No. 13 C 3565
                                   )
MICHAEL P HUERTA,                  )
Administrator, Federal             )
Aviation Administration,           )
                                   )
             Respondent.           )

MEMORANDUM OPINION AND ORDER

In this action—the first of its kind in this district since Congress enacted the Pilot's Bill of Rights ("PBR"), Pub. L. No. 112-153, 126 Stat. 1159 (2012), in August of 2012—petitioner[1] Andrew Dustman seeks judicial review of an emergency order by the Federal Aviation Administration ("FAA") revoking his unrestricted medical certificate. The order became final after it was upheld by the National Transportation Safety Board ("NTSB") following discovery and a full hearing before an administrative law judge.

At the initial status hearing in this case, disputes arose with respect to several threshold issues. First, the parties

---

[1] In his brief, petitioner refers to himself as "respondent" to reflect his posture in the administrative proceedings below. But because all agree that the current proceedings arise out of his "petition" for review, I follow my usual custom of referring to him as "petitioner." So as not to confuse things unduly, however, I refer to the Administrator by that title, rather than as "respondent."

disagree about both the scope and the standard of district court review of the FAA's decision under the PBR. Second, the parties dispute whether, in seeking review of the agency's decision in this court, petitioner is required to comply with the Federal Rules of Civil Procedure regarding service of a summons. I directed the parties to brief these issues, which brought to light a further dispute: whether I may consider press releases and other public statements by Senator Jim Inhofe, who drafted and co-sponsored the bill that became the PBR, in construing the statute. The parties submitted additional briefs to address this issue, and I resolve their threshold disputes as follows.

I.

According to the petition for review, on January 28, 2013, the FAA Administrator issued an emergency order revoking petitioner's airman medical certificate[2] on the ground that he no longer met the qualification standards set forth in 14 C.F.R. § 67.107(a)(4)(ii)(A) and (C) because he met the criteria these sections establish for alcohol dependence. Petitioner timely appealed the Administrator's emergency order to the NTSB. The Administrator then filed a complaint against petitioner, which

---

[2] "Airman certificates" authorize individuals to serve as, *inter alia*, pilots, crew members, aircraft mechanics, and air-traffic controllers. See 49 U.S.C. § 40102(a)(8) (defining "airman").

raised the same allegations.[3] Petitioner responded, denying the allegations of the emergency order and the complaint.

Following discovery and disclosure of documents and witnesses, a hearing was held before an NTSB administrative law judge. Both parties presented documentary and testimonial evidence through lay and expert witnesses.[4] At the conclusion of the hearing, the ALJ issued an initial decision reversing the Administrator's emergency order of revocation, concluding that the Administrator had not established that petitioner met the FAA criteria for alcohol dependence.

The Administrator timely appealed the ALJ's initial decision to the full NTSB. Both parties submitted appellate briefs. The NTSB then issued an opinion and order reversing the ALJ's initial decision and affirming the Administrator's emergency order, which then became final. Thereafter, petitioner invoked his right,

---

[3] I presume, although petitioner does not so specify, that this complaint is the one contemplated by the procedure set forth in 49 C.F.R. § 821.31(a), which governs NTSB proceedings relating to amendments, modifications, suspensions and revocations of certificates, and provides, "[t]he order of the Administrator from which an appeal has been taken shall serve as the complaint. … If the Administrator has determined that the respondent lacks qualification to be a certificate holder, the order filed as the complaint…shall identify the pleaded factual allegations on which this determination is based."

[4] Pursuant to the PBR, these proceedings were required to "be conducted, to the extent practicable, in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence." 126 Stat. 1159. *See also* 49 C.F.R. § 821.38 ("The Federal Rules of Evidence will be applied in these proceedings to the extent pracicable.") Petitioner does not allege that these requirements were not observed.

pursuant to Section 2(d)(1) of the PBR, to have this court review the agency's decision.

## II.

The parties' first dispute—which is really two related but distinct disputes, one about the scope and the other about the standard of my review—essentially boils down to the question of whether the Administrative Procedure Act ("APA") applies to petitioner's request for review in this court.

The APA enacted a comprehensive regulatory scheme designed "to bring uniformity to a field full of variation and diversity." *Dickinson v. Zurko*, 527 U.S. 150, 155 (1999). The statute governs numerous aspects of agency action, including licensing and adjudication, among others, and it also provides for judicial review of administrative proceedings. The *Dickinson* Court explained that Congress intended the APA to establish "a uniform approach to judicial review of administrative action," which would apply not only to decisions made under then-current statutory and regulatory regimes, but also to decisions taken pursuant to future legislation, unless the legislation clearly and expressly provided otherwise. *Id.* The Court concluded that this was Congress's intent based on "the congressional specification in the APA that '[n]o subsequent legislation shall be held to supersede or modify the provisions of this Act except to the extent that such legislation shall do so expressly.' § 12,

4

60 Stat. 244, 5 U.S.C. § 559." *Id*. Accordingly, the Court held that any "legislative departure from the norm must be clear." *Id.*

It is undisputed that before Congress enacted the PBR, judicial review of NTSB decisions—which at the time was entrusted exclusively to the United States Courts of Appeals—was governed by the APA. *See, e.g., Singleton v. Babbitt*, 588 F.3d 1078, 1081 (D.C. Cir. 2009) ("Our review of decisions by the NTSB is governed by the Administrative Procedure Act (APA) and the Federal Aviation Act"); *Garvey v. NTSB*, 190 F.3d 571, 577 (D.C. Cir. 1999) (explaining that on judicial review, the NTSB's findings of fact are "conclusive if supported by substantial evidence," and that its decisions must be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," pursuant to 5 U.S.C. § 706(a)(2)); *Johnson v. NTSB*, 979 F.2d 618, 620 (7th Cir. 1992) (describing review of NTSB decision as "narrow" and citing "arbitrary or capricious" standard of § 706(a)(2)(A)). Indeed, until 1994, the Federal Aviation Act explicitly required that judicial review of NTSB orders "be conducted in accordance with the provisions of the Administrative Procedure Act (APA), including 5 U.S.C. § 706(2)(A)." 49 U.S.C. § 1903(d)(1994). Although this language was later repealed, the *Garvey* court explained that it was simply "omitted as unnecessary because [the APA] applies by its own

5

terms." 190 F.3d at 577 n.4 (citing H.R. Rep No. 103-180, at 18 (1993)). The parties further agree that the PBR did not change the judicial review standards applicable to NTSB appeals filed directly in the Courts of Appeals.

It is likewise beyond dispute that when reviewing NTSB decisions, the Courts of Appeals have done so based on the existing administrative record, as is the norm under the APA. Indeed, 5 U.S.C. § 706 provides that the reviewing "court shall review the whole record or those parts of it cited by a party," and does not contemplate the submission of additional evidence beyond the existing record on appeal. On review of an administrative decision subject to this provision, the Supreme Court observed in *Camp v. Pitts*, 441 U.S. 138, 142 (1973), that the "focal point for judicial review" of agency decisions is "the administrative record already in existence, not some new record made initially in the reviewing court." The Court went on to emphasize that "de novo review is appropriate only where there are inadequate factfinding procedures in an adjudicatory proceeding, or where judicial proceedings are brought to enforce certain administrative actions." *Id.* *See also U.S. v. Carlo Bianchi & Co.,* 373 U.S. 709 at 715 and n. 7 (1963) (observing that the "arbitrary or capricious" and "substantial evidence" standards adopted in the APA "have consistently been associated with a review limited to the administrative record.").

6

Confining a reviewing court to the administrative record is not only consistent with the express terms of 5 U.S.C. § 706, it also reflects "practical considerations that deserve respect." *Cronin v. U.S. Dept. of Agriculture*, 919 F.2d 439, 444 (7th Cir. 1990). As the *Cronin* court observed,

> Administrative agencies deal with technical questions, and it is imprudent for the generalist judges of the federal district courts and courts of appeals to consider testimonial and documentary evidence bearing on those questions unless the evidence has first been presented to and considered by the agency.

*Id.* The D.C. Circuit has similarly explained that confining district court review to administrative record

> stems from well ingrained characteristics of the administrative process. The administrative function is statutorily committed to the agency, not the judiciary. A reviewing court is not to supplant the agency on the administrative aspects of the litigation. Rather, the judicial function is fundamentally and exclusively an inquiry into the legality and reasonableness of the agency's action, matters to be determined solely on the basis upon which the action was administratively projected.

*Doraiswamy v. Sec'y of Labor*, 555 F.2d 832, 840 (D.C. Cir. 1991).

The rationale of these courts is apropos here. The FAA's congressional mandate, established by the Federal Aviation Act, 49 U.S.C. §§ 40101 et seq., includes the responsibility to "promote safe flight of civil aircraft in air commerce." 49 U.S.C. § 44701(a). The FAA enjoys broad authority to prescribe regulations and standards to establish "practices, methods, and

7

procedures the Administrator finds necessary for safety in air commerce and national security." 49 U.S.C. § 44701(a)(5). In the exercise of its regulatory authority, the FAA may issue—and likewise may suspend or revoke—airman certificates. *See* 49 U.S.C. §§ 44702(a), 4409(b). The FAA is obligated to carry out its mandate to regulate safety "in a way that best tends to reduce or eliminate the possibility or recurrence of accidents in air transportation." 49 U.S.C. § 44701(c).

The Federal Aviation Act delegates to the NTSB—an independent federal agency composed of five Presidential appointees—the authority to adjudicate disputes arising out of the FAA's enforcement of its regulations and standards. 49 U.S.C. § 1133. It may appoint administrative law judges to conduct evidentiary hearings in accordance with sections 556 and 557 of the APA and to issue initial decisions that are subject to full NTSB review on appeal. As noted above, courts reviewing final NTSB decisions have uniformly done so on the administrative record, through the lens of the APA's judicial review provisions.

In August of 2012, Congress passed the PBR, which amends certain aspects of FAA enforcement proceedings. It provides, for example, that proceedings "shall be conducted, to the extent practicable, in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence," and requires the Administrator to inform airmen who are subject to investigation

of their rights.  It also requires that the Administrator provide airmen who are investigated with access to information "that would facilitate the individual's ability to productively participate" in enforcement proceedings.  With respect to appeals from certificate actions, the PBR provides as follows:

    (d) APPEAL FROM CERTIFICATE ACTIONS.--

    (1) IN GENERAL.--Upon a decision by the National Transportation Safety Board upholding an order or a final decision by the Administrator denying an airman certificate under section 44703(d) of title 49, United States Code, or imposing a punitive civil action or an emergency order of revocation under subsections (d) and (e) of section 44709 of such title, an individual substantially affected by an order of the Board may, at the individual's election, file an appeal in the United States district court in which the individual resides or in which the action in question occurred, or in the United States District Court for the District of Columbia. If the individual substantially affected by an order of the Board elects not to file an appeal in a United States district court, the individual may file an appeal in an appropriate United States court of appeals.

    …

    (e) STANDARD OF REVIEW.--

    (1) IN GENERAL.--In an appeal filed under subsection (d) in a United States district court, the district court shall give full independent review of a denial, suspension, or revocation ordered by the Administrator, including substantive independent and expedited review of any decision by the Administrator to make such order effective immediately.

    (2) EVIDENCE.--A United States district court's review under paragraph (1) shall include in evidence

any record of the proceeding before the Administrator
and any record of the proceeding before the National
Transportation Safety Board, including hearing
testimony, transcripts, exhibits, decisions, and briefs
submitted by the parties.

III.

With the foregoing legislative, regulatory, and
jurisprudential landscape in mind, I turn to petitioner's
argument that the PBR creates an entitlement to a de novo trial
on a newly-created evidentiary record. Petitioner insists that
this was Congress's intent, as evidenced by the language in the
statute providing that "the district court shall give full
independent review of a denial." As further support for his
position, petitioner cites a press release and other public
statements made after the PBR was passed by its author and chief
sponsor, Senator Inhofe. But the text of the statute does not
establish Congress's intent to depart from clearly established
APA norms, and I am amply persuaded that I may not consider Sen.
Inhofe's statements in this connection. *See Covalt v. Carey
Canada Inc.*, 860 F.2d 1434, 1438 (7th Cir. 1988) ("Legislative
history is valuable only to the extent it reveals the background
of the law and the assumptions shared by those who wrote and
voted on the bills…. Statements and thoughts that not only did
not but also could not have come to the attention of Congress at
the time do not reveal the process of deliberations."). As the

10

*Carey* court explained, "[s]ubsequent writings may be nothing but wishful thinking, and unless they are uttered as part of the process of enacting a later law (and therefore show assumptions on which Congress as a whole acted at least once) they are of no account." *Id.* (citing *Quern v. Mandley*, 436 U.S. 725, 736 n. 10 (1978)). *See also Continental Can Co., Inc. v. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund*, 916 F.3d 1154, 1157 (7th Cir. 1990) ("[S]tatements after enactment do not count; the legislative history of a bill is valuable only to the extent it shows genesis and evolution.")

The language Congress chose to establish the new right of airmen to an appeal an adverse decision by the NTSB in the district court is not a model of clarity. Indeed, I conclude that Congress's intent regarding the scope and standard for district court review cannot be ascertained from the literal text of the PBR. Fortunately, Congress was not writing in a vacuum when it enacted the PBR. "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Mach Min., LLC v. Sec'y of Labor, Mine Safety and Health Admin.*, ---F.3d---, at 2013 WL 4504802 (7th Cir. 2013) (citations omitted). The "context" and the "overall statutory scheme" include, at a minimum, the entirety of the PBR, as well

11

as relevant portions of the Federal Aviation Act and the APA. These plainly do not support petitioner's position.

While it is true that the phrase "full, independent review" can plausibly be interpreted, on its face, to require something more than the deferential review the APA mandates (though the Administrator cites several cases in which courts have described their deferential review pursuant to the APA as an "independent review" of the administrative record, *see Krichbaum v. U.S. Forest Serv.*, 973 F. Supp. 585, 588 (W.D. Va. 1997), *aff'd,* 139 F.3d 890 (4th Cir. 1998); *Truth in Labeling v. Shalala*, 999 F. Supp. 1289, 1298 (E.D. Mo. 1998) (judicial review under the APA "requires an independent review of the same administrative record that was before the agency")), when viewed in the context of the statute as a whole, the APA, the FAA, and the scores of cases interpreting the latter statutes, it is unreasonable to infer from these words alone that Congress meant to provide pilots the right to a complete "do-over" of the administrative proceedings below.

As both parties observe in their reply briefs, the PBR reflects a "compromise," as the bill as it was originally proposed would have allowed airmen to appeal FAA decisions directly to district courts, rather than require them to exhaust their administrative appeals through the full NTSB board, as the bill that was enacted into law does. *See Dexter v. Huerta*, No.

12

1:12 CV 1147, 2103 WL 5355748 (M.D.N.C. Sept. 24, 2013) (district court jurisdiction under PBR requires exhaustion through a ruling by the full board of the NTSB). The PBR thus preserves the primacy of the agencies' enforcement authority, but it also mandates enhanced procedural safeguards throughout the administrative appeals, as well as an additional layer of review in federal court. *Id.* Viewed together, and as part of a "coherent and consistent framework of reforms," *id.*, at *2, the PBR is best understood as striking a balance between the rights of airmen to a fair and transparent appeals process with the interests of public safety, agency authority, and judicial economy.

Petitioner suggests in his reply that the vast body of case law explaining and interpreting the principles of judicial review of administrative decisions generally, as well as pre-PBR caselaw construing the contours of the FAA's enforcement authority, have all been rendered inapplicable to certificate appeals by virtue of the PBR. This interpretation freights a single, ambiguous phrase with far more significance than it is due. Although Congress's choice of the phrase "full, independent review" is somewhat perplexing, I agree with the Administrator that it would be senseless and wasteful to construe it such that the statute as a whole requires airmen to exhaust their administrative appeals, but then entitles them to scotch those proceedings entirely and

start afresh in the district court. Enforcement proceedings before the NTSB are not a prefatory scrimmage. Whatever Congress may have meant by the phrase "full independent review," nothing in the PBR or in any other statutory authority suggests that Congress intended for district courts to supplant the entirety of the administrative appeals process. *See Doraiswamy v. Secretary of Labor*, 555 F.2d 832, 840 (D.C. Cir. 1976).

Moreover, as the Administrator correctly points out, had Congress intended district courts' review to be "de novo," or to be based on a record containing new evidence, it could have provided so expressly, as it has elsewhere. *See, e.g.*, 8 U.S.C. § 1421(c) (court's review of a denial of an application for naturalization "shall be de novo, and the court shall make its own findings of fact and conclusions of law"); 20 U.S.C. § 1415(i)(2)(C) (in civil action appealing administrative decision pursuant to Individuals with Disabilities Education Act, the court "shall hear additional evidence at the request of a party.") Congress surely would have used similar language in the PBR if it had intended to depart from well-settled norms enshrined in extensive authority mandating deferential judicial review on the existing administrative record.

Nor does the PBR's scant legislative history, none of which directly addresses the standard or scope of judicial review, support petitioner's view. Indeed, the statements made during

14

floor debates generally reaffirm agency expertise and traditional principles of deference. For example, Senator Rockefeller, who objected to the bill as it was originally proposed because he viewed the curtailment of FAA and NTSB authority as implicating "serious safety consequences," *see* 158 Cong. Rec. S4174 (daily ed. June 14, 2012), noted that the statute as enacted "preserves the FAA's authority to take actions to maintain the safety of the air transportation system." 158 Cong. Rec. S4733 (daily ed. June 29, 2012). He further emphasized that Congress intended appeals of FAA decisions in the NTSB continue to be reviewed under an "arbitrary or capricious" standard, despite the fact that the statute eliminated language providing so expressly. *Id.* Sen. Rockefeller explained that the deleted language was "redundant of what is already provided for under the law," and that the purpose of the change was "to make the statute consistent with the laws governing all other Federal agencies." *Id.*[5]

Having gone to great lengths to emphasize Congress's intent to "continue to apply principles of judicial deference to the FAA interpretations of the laws, regulations, and policies in accordance with the Supreme Court precedent" in proceedings

---

[5] *In statements made in the House, Rep. Bucshon similarly alluded to the deference courts owe to agency expertise, noting that "[i]t is the intent of Congress that courts not act in a way that is contrary to civil aviation safety in conducting their reviews of the NTSB's decisions." 158 Cong. Rec. H5100 (daily ed. July 23, 2012).*

before the NTSB, it is implausible to suppose that Senator Rockefeller declined to comment on a newly established appeals process that, under petitioner's interpretation, would jettison these principles entirely on district court review.

In sum, neither the text of the statute, nor its legislative history, suggests that Congress intended to depart from firmly the firmly rooted principles that govern judicial review of administrative proceedings. What remains are petitioner's inferential arguments—for example, his argument that because the PBR confers district court jurisdiction for only "a small subset of appeals from NTSB decisions…the district court was meant to be a trial court[,] not just a new 'appellate' venue," Pet.'s Reply, at 2, for which he cites no legal authority. Accordingly, I conclude that petitioner is not entitled to a new hearing on the merits in this court, and that I may overturn the decision to revoke his medical certificate only if I determine, based on the administrative record, that that decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," pursuant to 5 U.S.C. § 706(a)(2).[6]

I now turn briefly to the parties' dispute over whether petitioner is required to serve summons on the United States

---

[6] Of course, if I determine that the administrative record is insufficient to establish the legality of the NTSB's decision, I may ultimately vacate the decision and remand for further administrative proceedings, but in no event will petitioner be entitled to a "de novo" hearing here.

Attorney for this district; the Attorney General of the United States; and the Administrator, and I conclude that the Administrator prevails on this issue as well. Petitioner does not dispute that these proceedings are subject to the Federal Rules of Civil Procedure; in fact, he argues as much at length in his brief. The Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts," with a handful exceptions not at issue here. That the action is in the nature of an appeal does not exempt petitioner from the requirements of Fed. R. Civ. P. 4(a). *See, e.g., Riverdale Mills Corp. v. U.S. Dept. of Transp.*, 225 F.R.D. 393, 395 (D. Mass. 2005) (applying Rule 4(a) to "motion for review" of FAA decision); *Word v. Michigan,* No. 10-CV-13441, 2010 WL 4609107, at *2 (E.D. Mich. Nov. 4, 2010) (rejecting argument that because action was styled "Petition for Judicial Review," no complaint or summons was required); *Delicata v. Bowen*, 116 F.R.D. 564, 565 (S.D.N.Y. 1987) (dismissing action for judicial review of administrative denial of social security benefits for failure to serve timely summons)

Petitioner's argument that he need not serve summons is tied up in his misguided argument that in these proceedings, the Administrator bears the burden of proof in a trial on the merits of the FAA's enforcement decision. This argument goes wrong at nearly every turn. It is petitioner, not the Administrator, who

commenced this action, regardless of whether it is in the nature of a review of the NTSB's decision. And as I explained above, petitioner is not entitled to a new trial on the merits in this court. At this juncture, the issue is not whether the Administrator met his burden of proof to establish the alleged ground for revocation of petitioner's certificate, but whether the NTSB's conclusion that he did was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." It is petitioner who bears the burden of proving that it was, and the procedural posture of the case is consistent with requiring him to serve summons.

**ENTER ORDER:**

_____
Elaine E. Bucklo
United States District Judge

Dated: October 23, 2013