IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDREW DUSTMAN,                    )
                                   )
                Petitioner,        )
                                   )
        v.                         )    No. 13 C 3565
                                   )
MICHAEL P HUERTA,                  )
Administrator, Federal             )
Aviation Administration,           )
                                   )
                Respondent.        )


MEMORANDUM OPINION AND ORDER

In this proceeding, petitioner[1] Andrew Dustman seeks reversal of the final decision of the National Transportation Safety Board (the "NTSB" or the "Board") to revoke his unrestricted medical certificate. On October 23, 2013, I held that to obtain this relief, petitioner must establish, based on the existing administrative record, that the NTSB's decision was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' pursuant to 5 U.S.C. § 706(a)(2)." *Dustman v. Huerta*, 2013 WL 5747079, *6 (N.D. Ill. Oct. 23, 2013). That decision settled, among other issues, the parties' dispute concerning the scope and standard of district court

_____
[1] Dustman persists in referring to himself as "Respondent" based on his view of the parties' respective legal postures, despite my unequivocal rejection of that view. *See Dustman v. Huerta*, 2013 WL 5747079, *7 (N.D. Ill. Oct. 23, 2013)

review of NTSB decisions of this nature in the wake of the Pilot's Bill of Rights, Pub.L. No. 112–153, 126 Stat. 1159 (2012), which Congress enacted in August of 2012.

The Administrator has filed for summary judgment affirming the NTSB's decision. Having reviewed the administrative record and the parties' respective submissions, I grant the Administrator's motion for the following reasons.

I.

The Federal Aviation Regulations (FAR) set forth standards for the issuance of airman medical certificates requiring that pilots have no history or diagnosis of "substance dependence, except where there is established clinical evidence, satisfactory to the Federal Air Surgeon, of recovery, including sustained total abstinence from the substance(s) for not less than the preceding 2 years." 14 C.F.R. §§ 67.107(a)(4), 67.207(a)(4), 67.307(a)(4). "Substance dependence" means "a condition in which a person is dependent on a substance…as evidenced" by any one of the following factors: "(A) Increased tolerance; (B) Manifestation of withdrawal symptoms; (C) Impaired control of use; or (D) Continued use despite damage to physical health or impairment of social, personal, or occupational functioning." 14 C.F.R. §§ 67.107(a)(4)(ii). An airman meets the FAA criteria for alcohol dependence—and thus is ineligible for a medical certificate—if he or she manifests a

medical history or clinical diagnosis of one of the enumerated factors during his or her lifetime. *See id.*

The facts culminating in the FAA Administrator's decision to revoke petitioner's unrestricted medical certificate are not in dispute. Indeed, petitioner declined to respond to the Administrator's L.R. 56.1 Statement of Undisputed Material Facts, effectively admitting their truth.[2] *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.") (Citation omitted). The parties' disagreement is not over the facts but over their proper interpretation: specifically, whether they establish that

---

[2] In the same stroke, plaintiff forwent his opportunity to present any additional facts that require the denial of summary judgment pursuant to L.R. 56.1(b)(3)(c). Although he states in his opposition that the "facts and testimony pertinent to this response are set forth in Mr. Dustman's Respondent-Appellee's Brief to the NTSB Full Board," which he purports to "adopt[] here as though more fully set forth herein," only the undisputed facts in the Administrator's statement are properly before me on summary judgment. For one, it is petitioner's duty, not mine, to identify the facts he believes are "pertinent" to his case. *See Rabin v. Flynn*, 725 F.3d 628, 635 (7th Cir. 2013) ("As we have repeated time and again, 'Judges are not like pigs, hunting for truffles buried in [the record].'") (quoting *Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010)). For another, plaintiff's failure to assert any additional facts by "the only acceptable means," *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995), effectively deprives the Administrator of the opportunity to admit or deny those facts. Ultimately, however, the issue is academic, since petitioner's argument does not rely on the existence of disputed material facts, but instead asserts that the NTSB drew the wrong conclusions from the undisputed facts.

petitioner meets the criteria for alcohol dependence under the Federal Aviation Regulations ("FAR"), 14 C.F.R. §§ 67.107(a)(4), 67.207(a)(4), and 67.307(a)(4). The following factual summary is drawn from the Administrator's L.R. 56.1 statement and my own review of the record.

Petitioner is a pilot who was issued a First Class Airman Medical Certificate in each of 2008, 2009, and 2010. On November 28, 2010, petitioner was involved in a car accident while attempting to drive home from a party at which he had consumed at least 10, and possibly as many as 19, alcoholic drinks over a period of roughly four hours. Police arrived on the scene of the accident and arrested petitioner on suspicion of driving under the influence of alcohol. A Breathalyzer test revealed that petitioner's blood alcohol level ("BAC") was 0.239, or nearly three times the legal limit in Illinois. Petitioner pled guilty to driving under the influence of alcohol. His driver's license was suspended for six months, and he was ordered to submit to drug and alcohol evaluation, among other measures.

After being informed of petitioner's alcohol-related auto accident, the FAA requested that petitioner submit evidence from which to evaluate his continuing eligibility for medical certification. Pursuant to this request, petitioner submitted a statement of his past and present alcohol use and circumstances

surrounding the offense; the police report and court records relating to the offense; two substance abuse evaluations from Countermeasures, Inc., an alcohol evaluation and treatment facility; and letters by Dr. Peter Lambrou, a senior Aviation Medical Examiner, Dr. Kenneth Thompson, a Human Intervention Motivational Study (HIMS) psychiatrist, and Ms. Francis Campbell, a certified addictions registered nurse, all of the Center for Aviation Medicine.

Dr. Charles Chesanow, the FAA's Chief Psychiatrist, reviewed this evidence and other documents in petitioner's airman medical file and concluded that petitioner met two of the criteria for alcohol dependence. In a memorandum to Dr. Matthew Dumstorf, Deputy Regional Flight Surgeon, dated June 12, 2012, Dr. Chesanow summarized the facts contained in the Thompson, Lambrou, and Campbell letters. R. at 580-81. He disagreed with Dr. Lambrou and Ms. Campbell's conclusion that petitioner was not alcohol dependent, stating that "neither one of these evaluations seem to consider Mr. Dustman's history of binge drinking." Dr. Chesanow observed that Dr. Thompson did note a history of binge drinking and that he recommended monitoring petitioner's drinking patterns. Dr. Chesanow concluded that petitioner met the FAR criteria for alcohol dependence based on evidence of increased tolerance (purposeful functioning after drinking in excess of 10 drinks) and evidence of impaired

control of use (a pattern of regular binge drinking and history of blackouts).

On September 11, 2012, the Great Lakes Regional Flight Surgeon advised petitioner that he was not qualified to hold any class of medical certificate. On January 13, 2013, the Administrator issued an Emergency Order of Revocation, revoking petitioner's airman medical certificate. The successive appeals of that order lead us to the present.

## II.

The central issue in the administrative proceedings was whether the Administrator had established, by a preponderance of the evidence, that petitioner met the FAR criteria for alcohol dependency. The administrative law judge who heard petitioner's appeal issued an oral ruling concluding that he had not, R. 771-791, but the full Board reversed the ALJ's decision in a written opinion. *Id*. at 923-959. At this juncture, the question is not whether the Administrator met his burden of proof, but whether the NTSB's conclusion that he had was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Accordingly, I begin my analysis by examining the Board's decision in some detail.

The Board first set forth the factual and procedural background of the case, then identified the legal standard governing its analysis. The Board explained that although the

NTSB "give[s] deference to our law judge's rulings on certain issues, such as credibility determinations or evidentiary rulings," it "review[s] the case, as a whole, under *de novo* review," thus rejecting petitioner's argument that the Board could reverse the ALJ's decision only if it was "arbitrary and capricious." R. 928.

The NTSB observed that this case turned on the "medical evidence," identifying Dr. Dumstorf, Dr. Chesanow, Dr. Lambrou, Dr. Thompson, and Ms. Campbell as the primary sources of that evidence, along with Dr. Stephen Dinwiddie, whom it described as "a forensic psychiatrist specializing in alcohol abuse and dependency."

The Board also considered the substance abuse evaluation under the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (the "DSM-IV") standard by Countermeasures, Inc. The NTSB then discussed the differences between the FAR standard and the DSM-IV standard for "alcohol dependence," explaining that the FAR standard is:

> stricter because of the heightened aviation safety implications involved in the medical certification process in that it is designed to identify airmen who may only exhibit a single factor indicating alcohol dependence problems. The Administrator has a legitimate safety interest in holding airmen to a high medical standard when it comes to the issues of alcohol dependence and abuse.

R. at 930. The Board went on to explain that the FAR define four factors—increased tolerance; manifestation of withdrawal symptoms; impaired control of use; or continued use despite adverse consequences—and establish that the presence of any one of these in an airman's lifetime satisfies the standard for alcohol dependence. R. at 929. By contrast, the Board explained, the DSM-IV, require "a maladaptive pattern of alcohol use, leading to clinically significant impairment or distress" as manifested by at least three of seven factors in a single 12-month period. The Board noted that the four FAR factors "generally overlap" with the DSM-IV factors of tolerance; withdrawal; frequent use in larger amounts than intended; and continued use despite knowledge of persistent or recurrent alcohol-related problems. *Id*. at 929-30.

The Board then summarized the trial testimony of the Administrator's medical expert, Dr. Chesanow:

> At the hearing, Dr. Chesanow opined [petitioner] met the FAR definition of alcohol dependence for increased tolerance and impaired control of use. In formulating his opinion, Dr. Chesanow noted his FAA predecessor had used a BAC level greater than 0.20 as indicative of increased tolerance. Since his predecessor's departure, Dr. Chesanow has looked at BAC as one factor in determining an increased tolerance but also examines other factors including how much alcohol the individual consumed and the level of functionality (sic) after consumption. In reaching his conclusion that [petitioner] had increased tolerance, Dr. Chesanow noted [petitioner's] BAC of 0.239 exceeded the FAA level of 0.20. Additionally, he opined [petitioner]'s admitted

8

consumption of between 10 to 19 drinks in a 4-hour period constituted a pathological amount of alcohol. Finally, he testified [petitioner]'s purposeful functioning on the evening of his DUI evidenced by calling taxi cabs for other individuals at the party, finding his own car keys and car, and operating his vehicle despite this exceedingly high BAC indicated an increased level of tolerance.

Likewise, Dr. Chesanow opined respondent's medical history of binge drinking since age 19 and blackouts showed an impaired control of use. Had [petitioner]'s binge drinking and blackouts been limited to his college years, Dr. Chesanow believed that those two issues might not have raised concerns with the FAA. However, because [petitioner] continued to binge drink while employed in a safety-sensitive industry, Dr. Chesanow felt this showed an episodic pattern of behavior. Dr. Chesanow also clarified that his review of the medical history was to make a regulatory determination as to whether [petitioner] was eligible to hold a medical certificate not to make a clinical diagnosis.

*Id*. at 932. The Board specifically disagreed with the ALJ's rejection of Dr. Chesnaow's opinion in favor of the conclusions proffered by Dr. Dinwiddie, Dr. Lambrou, Dr. Thompson and Nurse Campbell, explaining that Dr. Chesanow's determination that petitioner was alcohol dependent was amply supported by the factual record:

Under our *de novo* review of the evidence, we disagree with the law judge's findings and find the record is replete with evidence to support by a preponderance of reliable, substantial, and probative evidence that [petitioner] is alcohol dependent as defined by the FAR.

*Id*. at 931-32. The Board then cited the following, undisputed facts:

- Petitioner admitted to drinking five to seven drinks once a week between the ages of nineteen and twenty-three, while in college;

- Petitioner admitted to "binge drinking"[3] twice a week between the ages of twenty-three and twenty-six, while a professional golfer;

- Petitioner admitted to drinking five to seven beers twice a month between the ages of twenty-six and thirty, when the events leading to his DUI arrest occurred.

- Petitioner admitted to drinking two drinks twice a month since his arrest.

- Petitioner acknowledged that he had experienced at least one alcohol related blackout during college, and that he could not recall the events occurring on the evening of his DUI arrest.

- Petitioner admitted that in the years leading up to his DUI, he "began driving after drinking," although he testified that he never drove intoxicated except on the evening of his DUI.

- Petitioner admitted, during his first interview at Countermeasures, Inc., that on the evening of his DUI arrest, he consumed fifteen beers and three to four glasses

---

[3] The parties' experts agree that "binge drinking" means having five or more drinks on one occasion.

of wine over a four-hour time period, and that his BAC that evening was nearly three times the legal limit.

R. at 933. In the Board's view, this evidence established "a history of binge drinking spanning over a decade and a recent history of driving after drinking," and supported Dr. Chesanow's conclusion. *Id.*

The NTSB also found that the May 17, 2011, report of Michelle Matury, director of the DUI program at Countermeasures Inc., supported Dr. Chesanow's determination. It noted Ms. Matury's assessment of petitioner as having "recurring substance use in situations in which it was physically hazardous," as well as her determination that petitioner met two of the seven DSM-IV factors, both of which are among those that overlap with the FAR factors: increased tolerance and use of the substance in larger amounts over longer periods than was indicated. The Board concluded that these findings "suffice to show a medical history of alcohol dependency under the FAR."

Finally, the Board found the "recommendations for continuing assessments and evaluations from Dr. Thompson, Dr. Chesanow, and [petitioner]'s own expert, Dr. Dinwiddie, of significance" in its decision to reverse the ALJ. R. at 935. The Board noted its longstanding precedent holding that "if an airman requires monitoring for a medical condition, that airman is not necessarily qualified for an unrestricted medical

11

certificate." *Id.* (citing cases).  The Board acknowledged that an airman is not automatically disqualified based on a need for medical monitoring but found that petitioner's "extensive medical history at a relatively young age—including over 10 years of binge drinking, several blackouts, and a DUI with a BAC level of 0.239 while he held an ATP certificate," coupled with multiple expert recommendations for ongoing alcohol assessments, disqualified petitioner from holding an unrestricted medical certificate in this case.  *Id.*

### III.

"[J]udicial review of an agency's final determination follows standards quite different from those applied in a typical summary judgment proceeding." *J.N. Moser Trucking, Inc. v. U.S. Dept. of Labor*, 306 F. Supp. 2d 774, 781 (N.D. Ill. 2004).  While my inquiry must "be searching and careful, the ultimate standard of review is a narrow one." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971).  As long as I am satisfied that the NTSB examined the relevant information and articulated a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made," its decision "implicates substantial agency expertise and is entitled to deference." *Indiana Forest Alliance, Inc. v. U.S. Forest Service*, 325 F.3d 851, 859 (7th Cir. 2003) (internal quotation marks and citations omitted).

I may set aside the NTSB's factual findings only if they are "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E), which is a "narrow standard of review." *Chritton v. NTSB*, 888 F.3d 854, 856 (D.C. Cir. 1989). I may not substitute my judgment for that of the Board, nor reject the Board's findings merely because "a plausible interpretation of the evidence would support a contrary view." *Id*.

In his motion for summary judgment, the Administrator argues that the NTSB's conclusion that petitioner is alcohol dependent under the FAR is supported by substantial evidence in the record. Specifically, the Administrator cites evidence of petitioner's extremely high BAC at the time of his DUI arrest, the amount of alcohol he consumed on that occasion, and his level of functionality after consuming that amount, all of which support the NTSB's finding of increased tolerance. By contrast, the Administrator asserts, the contrary conclusions of Dr. Dinwiddie, Dr. Lambrou, and Ms. Campbell were based primarily on the DSM-IV standard, not the FAR standard (which, indeed, Dr. Dinwiddie characterized as undefined, broad, and "scientifically vacuous" with respect to how "increased tolerance" was defined *see* R. at 761).

The Administrator likewise asserts that substantial evidence supports the NTSB's conclusion that petitioner met the criteria for alcohol dependence based on the FAR's "impaired

control of use" factor. The Administrator notes that petitioner's history of "binge drinking" is undisputed. Moreover, Dr. Chesanow opined that petitioner's history of blackouts demonstrates impaired control of use because it indicates his use of alcohol "to the point of being…in a physically hazardous situation." R. 414-15. Dr. Chesanow's opinion in this regard echoed that of Ms. Matury, who, as the NTSB noted, likewise concluded that petitioner had "recurring substance use in situations in which it was physically hazardous." R. 934.

Finally, the Administrator argues that the NTSB appropriately found that recommendations by petitioner's own experts and others that petitioner's alcohol use be "assessed" and "monitored" further supports its decision.

Petitioner does not meaningfully respond to these arguments. Instead, he insists that the NTSB's decision was arbitrary and capricious because it departed from its own precedent without explanation, and because it applied "nebulous" standards and relied on "cherry-picked" evidence. Neither of these arguments has merit.

While it is true that an agency's unexplained departure from its established precedent may be grounds for reversal under the APA standard, see *Ramaprakash v. F.A.A.*, 346 F.3d 1211, 1124-25 (D.C. Cir. 2003), petitioner's invocation of that

principle here is misguided. The error petitioner attributes to the Board is its putative departure from precedent holding that the NTSB owes deference to the ALJ's credibility determinations. As noted above, however, the Board explicitly acknowledged this precedent, then correctly determined that the case did not turn on the credibility of witnesses. R. at 928, 937.

Petitioner erroneously frames as a credibility issue the Board's conclusion that Dr. Chesanow's expert opinion that petitioner was alcohol dependent was more consistent with the weight of the evidence than the contrary opinions of Dr. Thompson, Dr. Lambrou, Ms. Campbell, and Dr. Dinwiddie. As the lengthy excerpts of the Board's decision above reveal, however, the Board did not decide which witnesses were more believable, but instead evaluated whose analysis of the undisputed facts in light of the FAR standard was sounder. That is perfectly in line with NTSB precedent, which "has consistently held that evaluation of expert testimony does not involve a weighing of credibility, but, rather an evaluation of the logic, depth, and persuasiveness of that testimony." *Adm'r v. Van DeHoef*, 5 N.T.S.B. 1062, 1062 (1986). The Board considered various competing (and, on some points, concurring) views and was persuaded that the weight of the evidence supported Dr. Chesanow's opinion that petitioner met the FAR standard for alcohol dependence. Its decision neither departed from nor

violated its precedent holding that the Board owes deference to ALJ's credibility findings.

Nor did the Board apply a "nebulous" standard for alcohol dependence. Petitioner overstates the significance of Dr. Chesanow's testimony that a BAC greater than 0.20 is indicative of increased tolerance, arguing that this putative "standard" is "not written down anywhere." But as the Board's opinion made clear, a BAC over 0.20 was merely "one factor" Dr. Chesanow considered in determining an increased tolerance, along with other factors such as the total amount of alcohol consumed and the individual's level of functioning after consumption. Moreover, the factors the Board considered here are not novel but are consistent with those it has considered in other cases. *See Adm'r v. Donovan*, 3 N.T.S.B. 2812, 2835 (1980) (finding the "[.23] blood level of [the airman] at the time of his arrest for driving was concrete evidence of tolerance"); *Pet. of Seaquist*, NTSB Order No. EA-5176, 2005 WL 2289552, (Sept. 16, 2005), *aff'd, Seaquist v. Blakey*, 210 Fed. App'x 423 (5th Cir. 2006) (finding pilot met the FAR criteria for alcohol dependence where the pilot "had admitted consuming 8-10 drinks prior to the third DUI incident, suggesting a high tolerance level"); *Pet. of Singh*, NTSB Order No. EA-5663, 2013 WL 3227361 (June 10, 2013) (finding that ability to drive at .29 BAC "unequivocally establishe[d] increased tolerance").

Petitioner likewise attaches significance to the letter he received from the FAA requesting an evaluation from a certified substance abuse specialist or addictionologist.  An enclosure to that letter with guidelines for the evaluation included the statement that "[s]ummary, appraisal, etc., with final diagnoses in accordance with standard nomenclature is of particular significance."  R. 183.  Based on this language, and the fact that his "final diagnosis in accordance with standard nomenclature" did not include a clinical diagnosis of substance dependence, petitioner argues that the Board's determination that he nevertheless met the FAR standards was arbitrary.  Yet petitioner's own expert, Dr. Dinwiddie, acknowledged that the diagnostic criteria in the DSM-IV are not coextensive with the FAR's standard for alcohol dependence, and that the two "could not be expected to identify comparable populations."  R. 760.  Accordingly, while a diagnosis "in accordance with standard nomenclature" may be helpful in determining whether an airman meets the FAR standard for substance abuse—indeed, it was here, as the NTSB cited Ms. Matury's assessment that petitioner met two of the DSM-IV's diagnostic criteria—it is not dispositive.  As the Board explained, the FAA is entitled to hold airmen to a "high medical standard when it comes to the issues of alcohol dependence and abuse."  R. at 930.  The FAA's reference to "standard nomenclature" in its request for a medical evaluation

does not make its standard "nebulous," nor was the Board's application of the FAR standard arbitrary.

Finally, it is plain from the Board's decision that it did not "cherry-pick" the evidence or "summarily disregard" the conclusions of plaintiff's expert. It simply disagreed with those conclusions, and it explained the basis for its disagreement. Because the Board examined the relevant evidence and provided a rational explanation for its decision, it is not subject to reversal under 5 U.S.C. § 706(a)(2). *See Indiana Forest Alliance*, 325 F.3d at 858-59.

IV.

For the foregoing reasons, the Administrator's motion for summary judgment is granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: May 30, 2014